1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CARLTON DWAYNE FIELDS,                    Case No.   1:18-cv-01545-DAD-JDP

12              Petitioner,                     FINDINGS AND RECOMMENDATIONS TO
                                                DENY PETITION FOR WRIT OF HABEAS
13        v.                                    CORPUS, DECLINE TO GRANT A
                                                CERTIFICATE OF APPEALABILITY, AND
14   CALIFORNIA DEPARTMENT OF                   DENY MOTION TO REDUCE
     CORRECTIONS AND                            RESTITUTION
15   REHABILITATION,
                                                ECF No. 1
16              Respondent.

17

18        Petitioner Carlton Dwayne Fields, a state prisoner without counsel, seeks a writ of habeas

19   corpus under 28 U.S.C. § 2254.  ECF No. 1.  Petitioner claims that: (1) his trial counsel was

20   ineffective when he failed to develop and present a drug-induced psychosis theory;[1] (2) his trial

21   counsel coerced him into pleading no contest; and (3) the trial court abused its discretion in

22   sentencing.  *See id.*  Petitioner also seeks a reduction in his court-ordered restitution.  *See id.*  The

23   respondent argues that the Court of Appeal's rejection of petitioner's ineffective assistance of

24   counsel claims was reasonable, and that petitioner's claim of state-law error does not entitle him

25   to relief.  *See* ECF No. 29.  For the reasons stated below, we recommend that the court deny the

26   petition.

27   _____

28   [1] Although petitioner also claims that his appellate counsel was ineffective, he has identified no factual support for this contention.  ECF No. 1.  Therefore, we cannot analyze this claim.

                                          1

## I.      Background

In 2013, petitioner pleaded no contest to various criminal charges, including mayhem, battery, assault with a deadly weapon, and criminal threats.  ECF No. 1 at 1.  He was sentenced to 21 years in prison.  *Id*.  We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal.  A presumption of correctness applies to these facts.  *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

### Case No. F11903982

In May through July 2011, Jane Doe lived on and off with Fields in an apartment in Fresno.  On the evening of July 2, 2012, she and Fields argued because Fields believed she had been unfaithful to him.  During the argument, Fields repeatedly threatened to kill her as he paced back and forth from the living room to the kitchen holding a cake knife.  At one point, Fields touched Doe on the stomach with the knife.  Eventually, Doe left the apartment and Fields followed her outside where they continued arguing.  Fields then lifted Doe off the ground and slammed her on the ground. Afterwards, Doe walked back to the apartment to get her belongings to leave but wound up staying there.  The following morning Fields and Doe continued arguing and Fields punched Doe in her right eye, which caused her eye to go blind.  Fields also grabbed Doe by the neck and slapped her on the face.  Prior to these incidents, Fields had assaulted Doe on four or five other separate occasions.

On July 3, 2011, Fresno Police Officer Leonard Turk arrested Fields and transported him to the Fresno County Jail.  While Turk used a computer in the patrol car to type out an arrest report, Fields kept asking for water.  Turk told Fields to calm down and he would get Fields some water as soon as they entered the jail.  Fields told the officer that if he did not get him some water, he was going to kick the patrol car's window out.  He then began kicking a rear window on the patrol car, damaging it.

### *The Psychological Evaluations*

On August 17, 2011, after an issue arose regarding Fields's mental competence, the court suspended criminal proceedings and appointed Drs. Howard Terrell and Paula Willis to evaluate Fields. Dr. Terrell examined Fields on August 22, 2011.  In his written evaluation, Dr. Terrell described Fields as appearing to be "floridly psychotic."  Dr. Terrell diagnosed Fields with nonspecific psychosis and cocaine abuse that was in institutional remission.  He recommended the court find Fields mentally incompetent.
On August 25, 2011, Dr. Paula Willis evaluated Fields.  Fields did not indicate to Dr. Willis that he had a history of mental disorders.

2

Dr. Willis noted that although Fields claimed he heard voices, he did not exhibit any outward signs of psychosis, his jail records did not indicate he ever exhibited psychotic symptoms, and Fields's thought processes appeared clear, well organized and without delusional content.  Dr. Willis administered the Miller Forensic Assessment of Symptoms Test (M-FAST) to Fields, which is used as a screening tool for malingering symptoms of mental illness.  Dr. Willis found that some of the symptoms Fields claimed he was experiencing indicated he was feigning mental illness and most of his responses were inconsistent with a true clinical disorder.  She concluded that Fields was suffering from substance abuse, that if he suffered any psychotic episodes they may have been induced by illicit drug use, and that there was no evidence that he suffered from a thought disorder while not under the influence of drugs.

On September 21, 2011, the court appointed Dr. Stephen Pointkowski to examine Fields.  During his subsequent examination of Fields, Dr. Pointkowski noted that "[j]ail psychiatric records reflected no credible psychotic symptoms and a pattern of manipulation."  Although Fields initially stated that he continuously experienced auditory hallucinations, he later described them as intermittent.  Additionally, although Fields claimed to have been experiencing auditory hallucinations throughout the interview, at no time did he appear distracted or to be responding to internal stimuli.  In concluding that Fields was probably competent to stand trial, Dr. Pointkowski wrote, "In all likelihood, Mr. Fields feigned psychotic symptoms and ignorance about legal terminology and processes."  Dr. Pointkowski also diagnosed Fields with "malingering (provisional)."

On October 24, 2011, the court found Fields competent and reinstated criminal proceedings.

On February 23, 2012, after an issue regarding Fields's competency again arose, the court suspended criminal proceedings and it appointed Drs. Harold Seymour and Robert Taylor to examine Fields.

On March 16, 2012, Dr. Taylor examined Fields.  During the interview, Fields appeared to be having an intense interaction with an imaginary woman.  However, he appeared surprisingly calm, unlike a person experiencing a genuine hallucination where the imaginary person was tormenting him.

Dr. Taylor administered the M-FAST to Fields and he earned a total score of 12, which is a level of performance consistent with malingering psychiatric illness.  On the Inventory of Legal Knowledge (ILK) test, Fields scored significantly below what is

3

expected by chance and this provided compelling evidence that Fields was feigning deficits in legal knowledge.

In reviewing Fields's jail psychiatric services (JPS) records, Dr. Taylor noted that Fields had not exhibited psychotic or manic symptoms to JPS staff and his thought processes had been intact and linear.  The JPS records also indicated that Fields had a minimal history of psychiatric treatment that had occurred exclusively while incarcerated whereas people who genuinely suffer psychotic symptoms typically have a lengthy history of psychiatric treatment and hospitalizations.  Dr. Taylor further noted that Fields claimed he was unable to remember where he was born, his name, his parents' names or his last employment, that Fields would have to be suffering from severe dementia in order for these claims to be credible, and that he did not have a history of such a severe neurological impairment.  Dr. Taylor concluded that Fields was malingering psychotic and manic symptoms and recommended the court find him competent to stand trial.

Dr. Seymour also evaluated Fields on March 16, 2012.  Dr. Seymour noted that Fields's thought process was disorganized and that he was experiencing auditory and tactile hallucinations.  Dr. Seymour diagnosed Fields with cocaine dependence, in institutional remission, marijuana abuse, in institutional remission, and psychotic disorder not otherwise specified, and he ruled out substance induced psychotic disorder.  Dr. Seymour noted that tactile hallucinations are commonly associated with cocaine dependency and he recommended that the court find Fields not competent to stand trial.

On March 22, 2012, the court ordered that Fields again be evaluated by Dr. Terrell.

On March 24, 2012, Dr. Terrell met with Fields for about eight minutes at the jail because Fields was extremely uncooperative. Fields fluctuated from laughing and giggling in a hilarious manner to clenching his fist and making angry hostile statements in a manner suggestive of a psychotic individual who was about to become explosively violent.  Based on this short encounter, Dr. Terrell diagnosed Fields with a psychotic disorder, NOS, and he recommended that the court find Fields not competent to stand trial.

On April 26, 2012, the court found Fields incompetent to stand trial.

On June 1, 2012, the court committed Fields to Atascadero State Hospital and he was admitted there on August 2, 2012.  In the admission report, psychiatrist Aliuddin Khaja, M.D., noted that

4

Fields reported symptoms that were not typical for psychiatrically ill patients. Dr. Khaja also noted that Fields's memory/cognitive deficits and his spelling and mathematical skills did not seem to correspond to his reported education level and were not consistent with a mentally ill patient. Fields's initial diagnosis was malingering, polysubstance dependence, and antisocial personality disorder.

Dr. B. Tehrani subsequently performed a malingering evaluation using . . . measures that were intended to detect malingering. Three of these measures indicated Fields was feigning or exaggerating symptoms. Further, the level of psychiatric impairment reported by Fields would generally be observed in a patient who was floridly psychotic and had major neurological or intellectual impairment or amnesiac disorder at the same time. However, Fields's history and presentation were not consistent with someone with that level of impairment and he was able to function without difficulty and get his needs met on a daily basis in his unit.

The results of the SIRS also indicated malingering because "Fields endorsed an unlikely number of symptoms with extreme or unbearable severity suggesting a strong likelihood he was exaggerating the severity of his impairment" and "[a]ccording to his test scores, he endorsed probable and definite feigning." Further, his performance on the ILK indicated a below chance performance, which implicated feigned deficits in legal knowledge.

An assessment report by the hospital filed on September 12, 2012, noted the observations and conclusions of Drs. Khaja and Tehrani and it reviewed the reports of the other doctors who examined Fields. The report also noted that unit staff and Fields's treatment team had not observed Fields exhibiting any overt psychiatric symptoms and that his behavior appeared to be well organized and due to manipulative personality traits and not from a genuine thought or mood disorder. Additionally, Fields's behavior was goal oriented and not impulsive or disorganized as would be true of a person with a genuine thought disorder. Based on the psychological tests and inconsistencies in Fields's behavior, the treatment team diagnosed Fields with malingering. The report recommended that Fields be "returned to court as competent to stand trial."

On September 19, 2012, the court considered the report from Atascadero State Hospital, found Fields competent, and reinstated criminal proceedings.

**Fields's Plea and Sentencing**

On December 12, 2012, the district attorney filed a first amended information charging fields with inflicting corporal injury on a cohabitant with a prior conviction (count 1/§ 273.5, subd. (e)(1)), mayhem (count 2/§ 203), battery with serious bodily injury (count 3/§ 243, subd. (d)), assault with a deadly weapon (count 4/§ 245, subd. (a)(1)), criminal threats (count 5/§ 422), and misdemeanor vandalism (count 6/§ 594, subd. (a)(2)).  The information also alleged a great bodily injury enhancement involving domestic violence in count 1 (§ 12022.7, subd. (e)), a serious felony enhancement (§ 667, subd. (a)), a prior prison term enhancement (§ 667.5, subd. (b)), and that Fields had a prior conviction within the meaning of the three strikes law (§ 667, subds. (b)-(e)).  That same day, Fields pled no contest to the six counts and admitted the enhancements and the three strikes allegations.

On January 22, 2013, defense counsel filed a sentencing memorandum arguing, in pertinent part, that the court should strike the three strikes allegations because: 1) Fields's criminal conduct resulted from substance abuse; 2) Drs. Seymour and Terrell diagnosed Fields as suffering from a mental condition that significantly reduced his culpability for his offenses; and 3) Fields had never received any treatment for his psychiatric problems.

On January 29, 2013, at Fields's sentencing hearing, the court granted the defense's request to take judicial notice of the prior psychological evaluations that were performed on Fields.  The court also noted that it had reviewed those reports including the one from Atascadero State Hospital.  Defense counsel argued that Fields's recent criminal activity stemmed from a mental or psychotic disorder that decreased his culpability and he asked the court to grant Fields probation or, alternatively, strike his strike conviction. The court denied both requests.

Thereafter, in case No. F11903982, the court struck the prior prison term enhancement in that case and sentenced Fields to an aggregate 18-year-term.

In case No. F09905868, after finding that Fields violated his probation based on his plea to the charges in case No. F11903982, the court lifted the stay on the previously imposed sentence and imposed a consecutive one-year term in that case, bringing his total aggregate term in both cases to 19 years.

After the court sentenced him, Fields complained that the court was not taking his drug problem into consideration, stating:

6

"My only argument in my own defense at this point is I don't feel the Court is taking into consideration the drug problem.  Not the mental problem.  Clearly I could not speak to the Court as I am today if I had some substantial mental health problem.  The Court found me incompetent to stand trial because of my behavior.  But the drug problem I don't feel is being taken into ... strong enough consideration.  I personally know, despite what the People feel about me, I know who I am, I know what I'm capable of, and I know that my problems that I suffered from were drug problems."

*See People v. Fields*, No. F066617, 2014 Cal. App. Unpub. LEXIS 7029, at *3-16 (Cal. Ct. App. Oct. 2, 2014).

In its decision of petitioner's second appeal, the Court of Appeal supplemented its opinion with the following:

**Appellate Opinion**

On October 2, 2014, this court filed an unpublished opinion in Fields's appeal from his convictions and sentence in case Nos. F11903982 and F09905868.  We rejected his argument that the court abused its discretion when it denied his request to dismiss the prior strike conviction or place him on probation:

"Fields's probation report indicates that Fields had a dismal criminal record that began in 1996 when he was convicted of exhibiting a deadly weapon other than a firearm.  In 2000 he was convicted of being drunk in public and resisting arrest, in 2001 of battery on a spouse, in 2005 of assault with a deadly weapon and child abuse, in 2008 of battery on a cohabitant, and in 2009 of possession of a controlled substance.

"Additionally, he served a prison term on his assault conviction, violated his parole for that offense once, and committed his most recent offenses while on probation for possession of cocaine base.  Further, his assault and child endangerment offenses involved Fields chasing and ramming his car into one driven by his ex-girlfriend with her male friend and two children ages one and three inside as both cars traveled at a high rate of speed.  The chase ended when Fields clipped the rear of his ex-girlfriend's car while traveling approximately 85 miles an hour causing her car to spin two times and flip three times.  The court could reasonably conclude from Fields's prior record, which appeared to be escalating in violence, and the circumstances of his brutal attack on victim Doe that left her blind in one eye, that Fields should not be deemed to be outside the spirit of the three strikes law.

7

"Moreover, there is no merit to Fields's contention that he was suffering from drug psychosis syndrome and that the court failed to give full weight to this factor.  In ruling on Fields's *Romero* motion, the court considered numerous reports of psychological evaluations that were performed on Fields.  The court's conclusion that Fields was malingering his mental symptoms was supported by several of these reports and by Fields's admission at his sentencing hearing that he did not have any 'substantial mental health problem.' Additionally, Fields did not claim he was suffering from any type of psychosis or other mental illness when he committed any of his offenses that involved violence.  Accordingly, we conclude the court did not abuse its discretion when it denied Fields's *Romero* motion."

This court also rejected Fields's argument that his defense counsel was prejudicially ineffective for failing to investigate his purported psychotic condition, because the expert reports had concluded he was feigning psychotic symptoms.

**Resentencing Hearing**

On March 24, 2015, Judge Harrell convened the resentencing hearing and stated the matter had been remanded to correct Fields' sentence so it would comply with section 654, and recalculate his presentence custody credits.

The court stated that the original sentence was based on Fields's criminal history and his conduct in this case.  It intended to correct Fields's sentence but it would not otherwise impose a lesser term. Defense counsel advised the court that Fields wanted "all rights he had at the previous sentencing hearing," including "a probation report, a psychological evaluation, and appointment of experts for new psychological evaluations."  Fields also wanted to withdraw his plea because of his alleged mental condition.  The prosecutor objected to these requests, and argued there was no basis to withdraw his plea.

The trial court denied Fields's requests.  "First concerning the request for a resentencing report, or a new probation report, the Court does not see the need for that. The Court of Appeal made it very clear in their opinion the issues that this Court must address. They even address the issue of presentencing credits that the probation report neglected to bring to the Court or counsel's attention.  So the Court sees no need for a new sentencing report."

The court also found Fields was previously evaluated by experts during the competency proceedings, it had considered those reports,

8

and he was not entitled to a new psychological evaluation. The court found a motion to withdraw his plea was untimely.

**The court's findings and orders**

The court said it had reviewed the original probation report, and read the appellate opinion. The court also took into consideration the numerous psychological evaluations prepared prior to his plea. The court believed that no one spoke on Fields' behalf at the first sentencing hearing. It acknowledged Fields now had a strong support system but further stated: "The difficult concept for the Court to deal with is that it seems other people suffer as a result of his issues, not once, not even twice, but several times, based upon the criminal history." The court understood it had discretion to select a term other than the aggravated term, but selected the aggravated term because of Fields's criminal history and the viciousness of the crime. The court reaffirmed the findings it made at the original sentencing hearing about the seriousness of Fields's offenses. The court declined to impose lesser terms "and run the risk of having someone else being hurt as significantly as the victim in this case." The court noted that Fields had been given an opportunity when he was previously placed on probation and parole, but that "did not bear any fruit whatsoever," and when this case occurred, he "did or nearly did put a woman's eye out."

The court imposed the aggravated term of eight years for the mayhem count, doubled because of the strike prior, for a term of 16 years for the principal term in case number F11903982. The term of imprisonment on the remaining felony counts was stayed pursuant to section 654. Fields was sentenced to time served for the misdemeanor vandalism count. The trial court also imposed a five-year term for the prior serious felony conviction but stayed the prior prison term enhancement. The total term imposed was 21 years in prison.

In case No. F09905868 the trial court reduced the conviction to a misdemeanor pursuant to Proposition 47 and sentenced Fields to time served.

*People v. Fields*, No. F071381, 2016 Cal. App. Unpub. LEXIS 6050, at *2-16 (Cal. Ct. App. Aug. 18, 2016).

## II.    Discussion

### a.    Standard of Review

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75

1  (2000).  Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty

2  Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition.  *See Harrington v. Richter*,

3  562 U.S. 86, 97 (2011).  To decide a § 2254 petition, a federal court examines the decision of the

4  last state court that issued a reasoned opinion on petitioner's habeas claims, *see Wilson v. Sellers*,

5  138 S. Ct. 1188, 1192 (2018).  In general, § 2254 requires deference to the state-court system that

6  produced the petitioner's conviction and sentence.

7       Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been

8  "adjudicated on the merits in state court proceedings" only if the state court's adjudication

9  resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly

10  established Federal law, as determined by the Supreme Court of the United States" or (2) "based

11  on an unreasonable determination of the facts in light of the evidence presented in the State court

12  proceeding."  28 U.S.C. § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018).  A state

13  court's decision is contrary to clearly established federal law if it reaches a conclusion "opposite

14  to" a holding of the United States Supreme Court or a conclusion that differs from the Supreme

15  Court's precedent on "materially indistinguishable facts."  *Soto v. Ryan*, 760 F.3d 947, 957 (9th

16  Cir. 2014) (citation omitted).  The state court's decision unreasonably applies clearly established

17  federal law when the decision has "no reasonable basis."  *Cullen v. Pinholster*, 563 U.S. 170, 188

18  (2011).  An unreasonable determination of facts occurs when a federal court is "convinced that an

19  appellate panel, applying the normal standards of appellate review, could not reasonably conclude

20  that the finding is supported by the record."  *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir.

21  2016).  A federal habeas court has an obligation to consider arguments or theories that "could

22  have supported a state court's decision."  *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018)

23  (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).  One rule applies to all state prisoners'

24  petitions adjudicated on the merits: the petitioner must show that the state court's decision is "so

25  lacking in justification that there was an error well understood and comprehended in existing law

26  beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

27       If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be."

28  *Richter*, 562 U.S. at 102.  As the Supreme Court has put it, federal habeas review "disturbs the

1  State's significant interest in repose for concluded litigation, denies society the right to punish

2  some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises

3  of federal judicial authority." *Id*. at 103 (citation omitted).  Our habeas review authority serves as

4  a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for

5  ordinary error correction through appeal." *Id*. at 102-03 (emphasis added).

6        As petitioner has entered a plea, his habeas review is limited in scope.  Generally, a

7  petitioner may not collaterally attack alleged pre-plea constitutional violations if he enters a

8  voluntary and intelligent guilty plea.  *See Tollett v. Henderson*, 411 U.S. 258, 265-67 (1973);

9  *Journigan v. Duffy*, 552 F.2d 283, 287 (9th Cir. 1977).[2]  However, a petitioner may challenge the

10  voluntary and intelligent character of the guilty plea or counsel's ineffectiveness in advising the

11  petitioner to enter a plea.  *See Tollett*, 411 U.S. at 267; *Journigan*, 552 F.2d at 287 n.6.

12        This court reviews the last reasoned opinions—in this case, that of the Court of Appeal on

13  petitioner's ineffective assistance of counsel claims and that of the state superior court on

14  petitioner's sentencing claim.[3]  Because petitioner's claims were rejected on the merits, the

15  deferential standard of § 2254 applies to his claims.

16        **b.        Ineffective Assistance of Counsel**

17        A doubly deferential standard governs a federal habeas petitioner's claim of ineffective

18  assistance of counsel.  The two-step inquiry from *Strickland v. Washington* guides the analysis for

19  an ineffective-assistance-of-counsel claim.  *See* 466 U.S. 668, 687 (1984).  First, a criminal

20  defendant must show some deficiency in performance by counsel that is "so serious that counsel

21  was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.*

22  Second, the defendant must show that the deficient performance caused him prejudice.  *Id.*  This

23  ────────────────

24  [2] In California, a no contest plea to a felony charge is "considered the same as a plea of guilty" and has the same legal effect as a guilty plea "for all purposes."  Cal. Penal Code § 1016; *see Jennings v. Mukasey*, 511 F.3d 894, 896 n.1 (9th Cir. 2007).

25  [3] The California Supreme Court summarily rejected all petitioner's claims.  "[W]hen the relevant

26  state-court decision on the merits . . . does not come accompanied with . . . reasons [for its decision,] . . . the federal court should 'look through' the unexplained decision to the last related

27  state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning."  *Ylst v. Nunnemaker*, 501 U.S. 797, 802

28  (1991).

1   requires petitioner to show "that counsel's errors were so serious as to deprive [the petitioner] of a

2   fair trial." *Id.* On habeas review, when filtered through Section 2254(d)'s fairminded-jurist

3   standard, the *Strickland* requirements become even more deferential, and we must ask "whether

4   there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."

5   *Richter*, 562 U.S. at 105. If there is even one reasonable argument that counsel did not violate the

6   *Strickland* standard—even if the state court has not identified the argument—then the petitioner

7   cannot obtain habeas relief. *See id.* at 106.

8                           **1.    Drug-induced Psychosis**

9          Petitioner argues that his trial counsel was ineffective because he failed to fully investigate

10  and present mitigating evidence at sentencing that he was suffering from drug-induced psychosis

11  at the time of the crime. ECF No. 1 at 5. The Court of Appeal found that petitioner's counsel's

12  actions were reasonable because there was no evidence in the record that petitioner was suffering

13  from drug-induced psychosis at the time of the crimes. *See Fields*, 2014 Cal. App. Unpub.

14  LEXIS 7029, at *20-24. The California Supreme Court summarily denied review. ECF No. 29 at

15  19.

16         First, petitioner's claim fails as a factual matter because his counsel raised drug-induced

17  psychosis as a mitigating factor at sentencing. Petitioner's counsel filed a sentencing

18  memorandum that argued that the court should strike the three strikes allegations because

19  petitioner's substance abuse and mental conditions reduced his culpability for his offenses. *Id.* at

20  *13. Counsel argued at sentencing that petitioner's "recent criminal activity does stem from some

21  sort of mental disorder or psychotic disorder," and that petitioner "was not somebody who was in

22  control of his actions at the time of what he did." ECF No. 30-8 at 64-65. Counsel specifically

23  stated, "my client is asking me to take into consideration the drug-induced psychosis at the time

24  of the crime . . . I have asked the court to put that in the probation report. And we are asking the

25  court to take that into consideration, if that has not already been taken into consideration." *Id.* at

26  68. The court then stated it considered "whatever mental issues may exist for Mr. Fields, as well

27  as drug use." *Id.* at 73.

28

1    Second, to the extent that petitioner argues that his counsel's performance was deficient

2    for a failure to fully investigate drug-induced psychosis, his claim also fails.  An attorney's

3    "strategic choices made after thorough investigation of law and facts relevant to plausible options

4    are virtually unchallengeable and strategic choices made after less than complete investigation are

5    reasonable precisely to the extent that reasonable professional judgments support the limitations

6    on investigation."  *Strickland*, 466 U.S. at 690-91.  A "particular decision not to investigate must

7    be directly assessed for reasonableness in all the circumstances, applying a heavy measure of

8    deference to counsel's judgments."  *Id*. at 691.  "When a defendant has given counsel reason to

9    believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure

10   to pursue those investigations may not later be challenged as unreasonable."  *Id*.  Reasonableness

11   turns on whether the evidence known to the attorney at the time the decision was made would

12   have led a reasonable attorney to investigate further.  *See Wiggins v. Smith*, 539 U.S. 510, 527

13   (2003).

14   Here, although there is evidence in the record that petitioner suffers from mental health

15   and substance abuse issues, there was little or no evidence in the record that petitioner was

16   suffering from a drug-induced psychosis at the time of the crime.  Petitioner was evaluated by

17   seven different doctors, four of whom found him to be malingering.  *See Fields*, 2014 Cal. App.

18   Unpub. LEXIS 7029, at *5-9.  A fifth doctor did not conclude that petitioner was malingering, but

19   her findings were consistent with malingering.  *Id*. at *6.  Although two doctors found that

20   petitioner suffered from psychosis, neither found that he suffered from drug-induced psychosis

21   and one specifically ruled out drug-induced psychosis.  *Id*. at *5-6.  At sentencing, the trial court

22   found it significant that many of the doctor's reports stated that petitioner was malingering.  ECF

23   No. 30-8 at 61-62.  Moreover, petitioner himself did not raise drug-induced psychosis at

24   sentencing, but rather stated that he had "drug problems."  *Id*. at 80.  Petitioner stated that

25   although he was "heavily on crystal meth and cocaine and alcohol" at the time of the crime, he

26   believed that the victim was injured severely "due to [his] actions."  *Id*. at 31-32.

27   We cannot find that the counsel's actions fell below the standards set by *Strickland*.  The

28   dearth of evidence in the record supporting a theory of drug-induced psychosis coupled with

13

petitioner's own statements at sentencing demonstrate that any decision by counsel to forego in-depth investigation of drug-induced psychosis was reasonable.  Moreover, counsel himself raised drug-induced psychosis at sentencing.  Because the Court of Appeal's decision was not contrary to or an unreasonable application of clearly established United States Supreme Court authority, or based on an unreasonable determination of the facts, petitioner's claim does not merit habeas relief.

### 2. Coerced Plea

Petitioner claims that his trial counsel's advice led him involuntarily to enter a plea of no contest.  ECF No. 1 at 12.  Petitioner specifically claims that his trial counsel was coercive when the attorney refused to enter a plea of guilty by insanity, as requested by petitioner, and when his counsel advised petitioner that the plea of no contest might lead to a more lenient sentence.  *Id.* at 12-13.  On collateral review, the state superior court denied the claim on the merits, finding that trial counsel acted reasonably, and the California Supreme Court summarily denied relief.  ECF No. 29 at 21-22.

A guilty plea must be intelligent, voluntary, and "done with sufficient awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748, (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  The plea should "represent a voluntary and intelligent choice among the alternative choices of action open to the defendant."  *Parke v. Raley*, 506 U.S. 20, 29 (1992).  "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  "It is only when the lawyer's errors were 'so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment' that Strickland's first prong is satisfied."  *Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (quoting *Strickland*, 466 U.S. at 687).  A petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty."  *Hill*, 474 U.S. at 59.

Here, there is no evidence that petitioner's counsel's actions fell below the *Strickland*
standard.  Counsel's advice before the plea hearing regarding leniency was well within the range
of competent legal representation.  *See Naranjo v. Kernan*, No. 15CV2666 AJB (BGS), 2017
U.S. Dist. LEXIS 51549, at *27 (S.D. Cal. Apr. 4, 2017) (finding no deficiency where counsel
advised petitioner that a rejection of the plea offer and subsequent conviction might lead to a life
sentence); *Brady*, 397 U.S. at 751 (A guilty plea is not compelled "whenever motivated by the
defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider
range of possibilities extending from acquittal to conviction and a higher penalty authorized by
law for the crime charged.").

At the plea hearing, petitioner's counsel expressed that he did not doubt petitioner's
mental competency to proceed with the plea hearing, but did alert the court that the petitioner
"had some things he wanted to tell" the court.  ECF No. 30-8 at 19-20.  Petitioner's trial counsel
explained to the court that petitioner had not taken his medication that morning, but that petitioner
had told him it "does not affect what he is about to do today."  *Id*. at 23.  The trial court asked
petitioner a series of questions to ensure that the plea was knowing and voluntary, and all of
petitioner's answers indicated that he was aware of the decision he was making.  The trial court
specifically asked petitioner, "Are you entering this plea knowingly and voluntarily?" to which
petitioner answered, "Yes, I am."  ECF No. 30-8 at 24-38.  Petitioner stated, "I would have to say
I understand what I'm pleading myself—exposing myself to, yes, I do."  *Id*. at 33.  After he
entered his plea, petitioner thanked the court, saying "I would just like to thank you, because you
helped me, you know, understand a lot of things . . . it was clear when you presented it to me."
*Id*. at 40.

Although petitioner claims the he "informed counsel that he wished to plead guilty by
reason of insanity" and "counsel refused to enter that plea," ECF No. 1 at 13, there is no evidence
in the record that petitioner's counsel prevented petitioner from speaking freely to the judge at
any time during the hearing.  In the event that petitioner's counsel advised him that a plea of
guilty by reason of insanity would be against his interest, such advice would have only served to

1   assist petitioner in reaching his decision.  Ultimately, it was petitioner who entered his plea of no

2   contest, and it appears that this plea was knowing and voluntary.

3          Petitioner has not pointed to any specific actions or failures to act by his trial counsel that

4   would lead us to believe his attorney's performance fell below constitutional standards.  Because

5   the state superior court's decision was not contrary to or an unreasonable application of clearly

6   established United States Supreme Court authority, or based on an unreasonable determination of

7   the facts, petitioner's claim does not merit habeas relief.

8          c.      **Sentencing Decisions**

9          Petitioner claims that the trial court abused its discretion when it refused to grant his

10  *Romero* motion and therefore refused to strike his prior conviction for sentencing purposes.[4]  ECF

11  No. 1 at 15.  He specifically argues that the trial court erred when it did not consider mitigating

12  factors in denying the *Romero* motion, such as petitioner's mental health.  *Id*.  Petitioner also

13  contends that the trial court abused its discretion at his resentencing hearing when it imposed a

14  harsher sentence than his original sentence, failed to consider his good behavior in prison as a

15  mitigating factor, and rejected his request for a supplemental probation report.  *Id*. at 20.  The

16  Court of Appeal denied these claims on the merits, finding no abuse of discretion in the trial

17  court's decisions, and the Supreme Court summarily denied review.[5]  ECF No. 29 at 24.

18         When a state courts rests its decision on its interpretation of state law, we are bound by

19  that court's decision.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502

20  U.S. 62, 71-72 (1991) ("Federal habeas relief does not lie for errors of state law.").  Habeas relief

21  is unavailable for alleged errors in the interpretation or application of state sentencing laws by

22  either a state trial court or appellate court.  *See Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir.

23  2002).  So long as a state sentence "is not based on any proscribed federal grounds such as being

24  cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for

---

25  [4] A *Romero* motion is a request to the trial court to strike prior felony convictions in a case
26  brought under California's three strikes law.  *See People v. Superior Court (Romero)*, 13 Cal. 4th
    497, 508 (Cal. 1996).

27  [5] The Court of Appeal rejected petitioner's claims related to his first sentencing in *Fields*, 2014
    Cal. App. Unpub. LEXIS 7029, at *16-20, and rejected his claims related to his second
28  sentencing in *Fields*, 2016 Cal. App. Unpub. LEXIS 6050, at *16-27.

1 | violation of state statutes are matters of state concern." *Makal v. State of Arizona*, 544 F.2d 1030,

2 | 1035 (9th Cir. 1976).

3 | Here, petitioner fails to state a federal claim for relief, but rather contests the decisions

4 | made at sentencing on state law grounds.  Whether to strike prior felonies in response to a

5 | *Romero* motion lies within the trial court's discretion.  *See People v. Superior Court (Romero)*, 13

6 | Cal. 4th 497, 508 (Cal. 1996); *Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002) (vacated and

7 | remanded on other grounds in *Mayle v. Brown*, 538 U.S. 901 (2003)) (finding a petitioner's claim

8 | that he should be resentenced in light of *Romero* was not cognizable on federal habeas review).

9 | The remaining sentencing decisions disputed by petitioner were also firmly within the discretion

10 | of the trial court.  *See Souch*, 289 F.3d at 623.  The Court of Appeal reviewed the trial court's

11 | denial of petitioner's *Romero* motion and related sentencing decisions for an abuse of discretion

12 | under California state law and found none.  *See Fields*, 2014 Cal. App. Unpub. LEXIS 7029, at

13 | *16-20.  Therefore, we are bound by the Court of Appeal's determination and decline to grant

14 | petitioner relief.

15 | **d.     Motion to Reduce Restitution**

16 | Petitioner seeks a reduction in his court-ordered restitution to the minimum amount

17 | allowed by law.  ECF No. 1 at 32.  Petitioner disputes the trial court's interpretation of California

18 | state law and claims that the court failed to consider certain factors when determining restitution.

19 | *Id*. at 37.  However, "[f]ederal habeas relief does not lie for errors of state law." *Estelle*, 502 U.S.

20 | at 71-72.  Therefore, we decline to review the trial court's restitution determination and deny his

21 | motion.  .

22 | **III.    Certificate of Appealability**

23 | A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district

24 | court's denial of a petition; he may appeal only in limited circumstances.  *See* 28 U.S.C. § 2253;

25 | *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 Governing § 2254 Cases requires a

26 | district court to issue or deny a certificate of appealability when entering a final order adverse to a

27 | petitioner.  *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th

28 | Cir. 1997).  A certificate of appealability will not issue unless a petitioner makes "a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, we recommend that the court not issue a certificate of appealability.

## IV.    Findings and Recommendations

The court should deny the petition for a writ of habeas corpus, ECF No. 1, and decline to issue a certificate of appealability. These findings and recommendations are submitted to the U.S. District Court judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

## V.    Order

Petitioner's motion to reduce his restitution is denied. ECF No. 1 at 32.


IT IS SO ORDERED.


Dated:    June 5, 2020    _____

                                                    UNITED STATES MAGISTRATE JUDGE


No. 206.

18